**In the Matter of the EXTRADITION OF Jose Luis Munoz SANTOS, a/k/a Jose Luis Hernandez Santos.**

**No. CV 06–5092 MMM(AJW).**

United States District Court,
C.D. California,
Western Division.

Dec. 21, 2006.

Joseph N. Akrotirianakis, U.S. Attorney Office, Riverside, CA, for Plaintiff.

Lara A Bazelon, Federal Public Defenders Office, Los Angeles, CA, for Defendant.

## ORDER REGARDING SANTOS'S MOTION FOR RELEASE ON BAIL

WISTRICH, United States Magistrate Judge.

### Proceedings

Acting on behalf of the Republic of Mexico, the United States of America (the "United States" or the "government") filed a complaint on May 12, 2006 seeking a provisional arrest warrant and the extradi-

tion of Jose Luis Munoz Santos ("Santos"). Magistrate Judge Carla Woehrle issued a provisional arrest warrant on that date, and Santos was arrested shortly thereafter. On May 17, 2006, Santos made his initial appearance before Magistrate Judge Margaret A. Nagle, who ordered that he be detained. A formal extradition request was filed on August 16, 2006.

On October 17, 2006, Santos filed a motion to dismiss this case ("Santos's MTD"). The government filed an opposition on November 6, 2006 ("Opp. to MTD"). A hearing was conducted on November 30, 2006. During that hearing, Santos indicated that he would request release on bail if the extradition complaint were not dismissed. In an order issued on November 30, 2006, this court denied Santos's motion to dismiss without prejudice to its renewal at a later stage of this case.

On December 6, 2006, Santos filed a motion for release on bail ("Motion for Bail") pending the extradition hearing in this case. The government filed an opposition. On December 7, 2006, the court held a hearing on Santos's request for release on bail.

Based on the papers filed in this action and the arguments of counsel, Santos's motion for release on bail is **granted,** subject to the conditions of release described at the end of this order.

### Factual background

The circumstances presented in this extradition case are highly unusual and problematic. The procedural facts are somewhat complex, but the core of the problem is that Mexico has requested Santos's extradition on the basis of arrest warrants which have been invalidated by its own courts because they fail to establish probable cause to believe that Santos committed the offenses charged. In seeking Santos's extradition to Mexico, the government in effect is asking this court to find that probable cause exists to believe that Santos committed the charged offenses on the basis of evidence which Mexico's own courts have twice found insufficient for that purpose.

According to the papers submitted in support of Santos's motion to dismiss and motion for release on bail, a warrant for his arrest on charges of kidnaping and aggravated homicide was issued by a judge in Mexico on March 17, 2006. That warrant served as a basis for the request by the Republic of Mexico to the United States for Santos's provisional arrest pursuant to article 11 of the Extradition Treaty Between the United States of America and the United Mexican States, May 4, 1978, 31 U.S.T. 5059, T.I.A.S. No. 9656 ("Extradition Treaty"), art. 11. Article 11 states, in pertinent part:

> In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application *shall contain ... a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.*

[Extradition Treaty, art. 11, section 1 (italics added) [1]].

---

1. The full text of article 11 of the Extradition Treaty is as follows:

 1. In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

 2. On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

Santos was taken into federal custody on or about May 17, 2006. On May 24, 2006, a federal court in Mexico issued a written decision granting Santos's request for a writ of "amparo."[2] The amparo nullified and voided the warrant for Santos's arrest on the grounds that it was procedurally defective and because there was evidence that Santos had been tortured by Mexican police. [Santos's MTD 3–4].

The prosecutor in Mexico attempted to cure the defects in the first arrest warrant by applying for a second arrest warrant, which was issued in Mexico on May 25, 2006. The formal extradition request filed on August 16, 2006 relied on the second arrest warrant.

Santos sought a writ of amparo with respect to the second arrest warrant. On August 16, 2006 (the same day the formal request for Santos's extradition was filed), a federal court in Mexico granted Santos's request and issued an amparo invalidating the second arrest warrant. [Santos's MTD 4]. A certified translation of the portion of the amparo invalidating the second arrest warrant summarizes court's conclusions as follows:

> [I]t is proper to conclude that with the issuance of the arrest warrant which is the subject of the [wrongful] acts claimed by the appellant, the appellant's right to judicial security as provided for in Article 16 of the Federal Pact [the Federal Constitution] was violated as it relates to his probable responsibility in the crime attributed to him since the issuing authority did not state a solid foundation for the elements required in the manner that all courts must do in issuing their determination relative to proper foundation and reasons for the same.

[Santos's MTD, Ex. B at 1 (bracketed material in original)]. The amparo further ordered the judge who issued the arrest warrant to

3. Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

4. The fact that the provisional arrest is terminated pursuant to paragraph 3 shall not prejudice the extradition of the person sought if the request for extradition and the necessary documents mentioned in Article 10 are delivered at a later date.

2. Santos states that "loosely translated," "amparo" means "a judicial order of protection." [Santos's Motion to Dismiss ("MTD") filed October 17, 2006 at 3]. The Ninth Circuit has explained that

"Amparo" is Spanish for "protection." Although the amparo is a highly complex legal institution ..., it is somewhat similar to habeas corpus and, inter alia, is the means to review and annul unconstitutional judicial decisions.... [¶] Like habeas corpus, the amparo has a more limited scope than an appeal and determines whether the contest act violated a petitioner's *constitutional* rights. *United States v. Fowlie*, 24 F.3d 1059, 1064 (9th Cir.1994)(emphasis in original)(internal citations omitted). The Ninth Circuit's interpretation is consistent with statements by Jose Manuel Rivas Alvarez ("Alvarez"), an attorney holding the position of Control Process Director for the Justice Attorney General's Office for the State of Nayarit, Mexico, in an affidavit submitted by the government in opposition to Santos's motion to dismiss. [*See* Opp. to MTD, Ex. B, Declaration of Jose Manuel Rivas Alvarez ("Alvarez Affidavit")]. Alvarez states that the writ of amparo is expressly limited to cases involving "the violation of constitutional rights and the invasion of sovereignties," and that "the amparo has not been established to compensate alleged formal violations that do not affect the essence of the matter in dispute, but to repair the violation of constitutional rights committed by the public power or its agents and which resulted in a real damage for petitioners." [Opp. to MTD, Ex. 2 (Alvarez Affidavit) 26].

make null and void the arrest warrant ... and in it's [sic] place he may issue a new determination which answers and meets the specific requirements outlined in this decision; that is, that he restate the foundation for the crimes of **homicide,** as well as that of **kidnaping** ... and being free within his jurisdiction to resolve according to the law, the probable responsibility of the appellant in the commission of the offense aforementioned....

[Santos's MTD, Ex. B at 1 (emphasis in original)]. In deciding whether to issue a new warrant, the judge below was admonished to take into consideration

the totality of the evidence that was brought forth and is part of the record, and to make a determination regarding how that evidence relates to the acts impugned (inclupatory and exculpatory evidence), and in this case state the reasons why it has evidentiary value and how it is taken into account and the weight given to it. Also, should the court arrive at the conclusion that the appellant has probable responsibility for the crimes aforementioned, or for any one of them, the court must state in a clear and precise manner the manner in which the appellant participated, and the reasons why the court has arrived at this conclusion.

[Santos's MTD, Ex. B at 1]. As authority for its holding, the court quoted a 1996 "Precedent Decision" by the Second Panel Court for the Sixth District stating that an "arrest warrant [is] illegal if the judge does not state the reasons for the determination of type of criminal offense and the

probable responsibility of the person to whom it is issued." [Santos's MTD, Ex. B at 2].

The amparo also held that the "effect of the amparo will extend to the [wrongful] acts claimed against the Attorney General of the State and the General Director of the State Police ... given their vested role as the law enforcement authorities...." [Santos's MTD, Ex. B at 3 (bracketed text in original)].

The amparo concludes with a "resolution" stating that "the justice of the union shelters and protects Jose Luis Munoz Santos against the order of apprehension and its execution...." [Santos's MTD, Ex. B at 3].

The Mexican prosecutor sought appellate review of the amparo invalidating the second arrest warrant. That appeal remains pending.

**The parties' contentions**

In support of his motion for release on bail, Santos contends that there are "several special circumstances that warrant bail in this case." [Motion for Bail 3].[3] Santos argues that bail is appropriate because Mexican courts have twice invalidated the arrest warrant used a basis for Mexico's extradition request and have concluded that the warrants were not supported by competent evidence establishing probable cause to believe he committed the charged offenses, and because the United States cannot meet its burden to show that Santos is extraditable absent a valid arrest warrant and a probable cause finding. Santos also argues that the likeli-

---

**3.** The relevant extradition treaty provision states:

3.In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:
a) A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

b) Evidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

Extradition Treaty, art. 10.

hood of further substantial delay in these extradition proceedings constitutes a special circumstance warranting bail. Santos maintains that his release on bail will not jeopardize his appearance for his extradition hearing nor pose any danger to the community.

The government argues that Santos has not demonstrated special circumstances warranting bail, and that the government's interest in complying with its obligations under the Extradition Treaty overrides even a small risk that Santos will not appear for his extradition hearing.

### Discussion

**Standard for release on bail in extradition cases**

■■■ "[T]here is a presumption against bail in an extradition case and only 'special circumstances' will justify bail."

Salerno v. United States, 878 F.2d 317, 317 (9th Cir.1989)(citing Wright v. Henkel, 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948 (1903)); (accord, In re Extradition of Kirby, 106 F.3d 855, 858 (9th Cir.1996)). The party seeking release on bail has the burden of showing that special circumstances exist. See Salerno, 878 F.2d at 317; United States v. Taitz, 130 F.R.D. 442, 444 (S.D.Cal.1990).[4] The party seeking release on bail in an international extradition case also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community, but those factors are not special circumstances which alone justify release on bail. See In re Extradition of Smyth, 976 F.2d 1535, 1536 (9th Cir.1992)(reversing an order granting release on bail where the district court found that the potential extraditee was not a

**4.** There is little authority concerning the burden of persuasion that must be satisfied by a potential extraditee seeking release on bail. One district court concluded that the applicant must adduce clear and convincing evidence demonstrating entitlement to bail. In re Extradition of Nacif–Borge, 829 F.Supp. 1210, 1214–15 (D.Nev.1993). That conclusion was derived in part from a questionable interpretation of the Ninth Circuit's brief opinion in Salerno. The district court in Nacif–Borge concluded that the Ninth Circuit "implicitly adopted the heightened standard of proof" used in three cases cited in Salerno for examples of "special circumstances" that may justify granting release on bail in international extradition cases. See Nacif–Borge, 829 F.Supp. at 1214–15. The Ninth Circuit, however, made no mention in Salerno of the burden of persuasion that applies to such bail requests. In addition, it is far from clear that the cases cited in Salerno themselves adopted a heightened burden of persuasion. Instead, it appears that the Nacif–Borge may have conflated the requirement in those three cases of a substantive showing of "special reasons" or "special circumstances" justifying bail with the need for a heightened standard of proof. This is confirmed by the court's assertion that "the plain meaning of 'special circumstances,' and the definitional language used by the

courts in interpreting and applying special circumstances, justify the application of the clear and convincing standard of evidence." Nacif–Borge, 829 F.Supp. at 1214. Because Salerno and other cases made it clear that "special circumstances" are limited to those that are qualitatively different than the factors already analyzed to determine flight risk or danger to the community, there is no need to read a heightened burden of persuasion into those cases.

In addition, Nacif–Borge analogized to provisions of the Bail Reform Act "concerning bail pending sentencing or notice of appeal and bail for persons convicted of certain serious offenses" where the burden is placed on the defendant to show by clear and convincing evidence that he will not flee or pose a danger. Nacif–Borge, 829 F.Supp. at 1215. In this case, analogizing to the bail requirements for a defendant who already has been criminally convicted is misplaced. Santos has not been convicted, and the only two warrants issued for his arrest have been invalidated by Mexican courts.

Nacif–Borge is not binding on this court, and for the foregoing reasons, its reasoning unpersuasive. Therefore, Santos's request for release on bail will be evaluated using a preponderance of the evidence standard.

flight risk but erred in finding that special circumstances justified bail); *Salerno,* 878 F.2d at 318 (noting that the absence of flight risk "is not the criteria [sic] for release in an extradition case")(citing *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir.1984)); *In re Extradition of Chapman,* 459 F.Supp.2d 1024, 1026–27 (D.Hawai'i 2006)(granting bail request where the respondents demonstrated that they posed neither flight risk nor danger to the community and that special circumstances warranted release).

■ "Examples of [special] circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno,* 878 F.2d at 317–318 (citing *Aronson v. May,* —— U.S. ——, 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964); *United States v. Williams,* 611 F.2d 914, 915 (1st Cir.1979); *Galante v. Warden,* 573 F.2d 707, 708 (2d Cir.1977)). The term "special circumstances," however, "has never been precisely defined and courts have addressed on a case by case basis particularly sufficient circumstances that would reverse the strong presumption against bail." *In re Extradition of Mainero,* 950 F.Supp. 290, 294 (S.D.Cal.1996); *see Kirby,* 106 F.3d at 863 (noting that the Supreme Court's decision in *Wright* "does not provide significant guidance as to what 'circumstances' might be considered 'special' "). Accordingly, "[t]he list of potential 'special circumstances' is not limited to those previously recognized in published decisions," and "the determination of what constitutes a 'special circumstance,' is left to the sound discretion of the trial judge." *In re Extradition of Gonzalez,* 52 F.Supp.2d 725, 736 (W.D.La.1999)(citing *Beaulieu v. Hartigan,* 554 F.2d 1, 1 (1st Cir.1977)).

### Delay

■ Santos contends that the time already elapsed since his arrest and the foreseeability of further delay in this case weigh in favor of granting his request for release on bail.

Courts have held that delay in the extradition proceeding is a circumstance, either alone or in combination with other factors, which may justify granting bail. *See Kirby,* 106 F.3d at 863 (noting that the Ninth Circuit "has recognized that 'unusual delay in the appeals process' can be a 'special circumstance' that will justify bail," and that "[o]ther circuits have expressed similar views," and holding that the district court did not err in finding a special circumstance due to the likelihood of "lengthy delays" in the extradition case); *Chapman,* 459 F.Supp.2d 1024, 1026–27 (holding that "a high probability of delay in the extradition proceedings" constituted a special circumstance); *Gonzalez,* 52 F.Supp.2d at 735 (noting that courts have found special circumstances where "there has been or will be significant delay in the appeals process")(citing *Kirby,* 106 F.3d at 863; *In re Extradition of Morales,* 906 F.Supp. 1368 (S.D.Cal.1995); and *United States v. Williams,* 611 F.2d 914, 915 (1st Cir. 1979)).

Santos has been in federal custody since approximately May 17, 2006, a period of more than seven months. During that entire period, the arrest warrants serving as the basis for Mexico's extradition request have been under a cloud. Not only did a Mexican court invalidate the first arrest warrant, but the second arrest warrant, which was obtained after Mexican prosecutors had notice of the deficiencies in the first warrant, also was invalidated. Although it is undisputed that the second amparo invalidated the second arrest warrant and prohibited its enforcement, the amparo is not final and enforceable under

Mexican law during the pendency of an appeal, the filing of which preserves the status quo until the appellate court issues its final, non-appealable ruling revoking or confirming the amparo. [*See* Opp. to MTD 30–31; Motion for Bail 5 n. 1].

During the hearing on Santos's bail motion, counsel for the government relayed the Mexican prosecutor's estimate that a decision on the amparo appeal could issue in one to two months, but counsel also conceded that there is no schedule for issuance of a decision by the appellate court, and that the process is open-ended. Santos's counsel represented that if a third arrest warrant is issued after the ruling on appeal, Santos likely would challenge that warrant as well. Since Santos has twice successfully challenged his arrest warrant, it would not be unreasonable for him to challenge a third arrest warrant. That, of course, would further delay a final decision by Mexican courts on the validity of the arrest warrant underlying the extradition request and the existence, under Mexican law, of probable cause to believe that Santos committed the charged offenses. This period of delay and anticipated future delay may be considered a special circumstance. *See Morales*, 906 F.Supp. at 1375 (holding that the seven months which the potential extraditee already had spent in custody, "together with the additional time the Court anticipates will be required before this matter is resolved" constituted a special circumstance justifying release on bail).

Moreover, conducting an extradition hearing before a final disposition of these questions by Mexican courts would be at best an inefficient use of the limited resources of this court and counsel. At worst, it could expose this court to the risk of making an extraditability determination that is not fully informed or that is inconsistent with determinations by Mexican courts bearing on the question whether the

extradition request meets all of the relevant extradition treaty requirements, including the requirement of a valid arrest warrant and the requirement of probable cause. *Cf. Casey v. Department of State*, 980 F.2d 1472, 1476 (D.C.Cir.1992)(holding that the district court lacked subject matter jurisdiction to review a Costa Rican court's decision that offenses charged in an American extradition request were crimes under Costa Rican law, and noting that it was not appropriate for the district court "[t]o conduct an inquiry into the rationale of the Costa Rican judicial decisions" because doing so "inevitably runs the risk of second-guessing their decisions—and to do so while their proceedings are still ongoing"). Although the government prefers not to delay the extradition hearing, as the party seeking extradition on behalf of the requesting state, the government bears the burden of demonstrating extraditability. On the present uncertain record, expediting the extradition hearing would not benefit the government.

Given the procedural history of this case to date both here and in Mexico, it also is reasonable to assume that Santos will appeal any decision certifying his extraditability by seeking habeas review. If habeas review requires the court to consider judicial decisions or developments in the Mexican prosecution that are relevant to the issue of extraditability but postdate the extradition decision, that review could be complex and time-consuming (and potentially could require a remand), obviating any reduction in delay that might be achieved by holding the extradition hearing before completion of the judicial process in Mexico. *See Taitz*, 130 F.R.D. at 444–446 (holding that there were special circumstances warranting release of a potential extraditee on bail where there was a "substantial question" as to whether the charged offenses were extraditable, where "resolution of this issue will no doubt in-

volve habeas corpus proceedings in the district court and the Court of Appeals," and where "the various district and circuit court proceedings would likely last for as long as two years," during which time the potential extraditee otherwise would remain incarcerated).

In short, the scheduling of an extradition hearing already has been delayed by circumstances which in this court's experience are wholly absent in a run-of-the-mill extradition case. These factors and the attendant delay are beyond the court's control, and to a significant extent the delay can be attributed to the failure of Mexican prosecutors not once but twice to present grounds for an arrest warrant that would withstand the scrutiny of their own nation's courts. There is every indication that this unusual situation will cause further unpredictable (and potentially lengthy) delays before this court can schedule an extradition hearing that will culminate in a decision which avoids the pitfalls described above. *See In re Kirby*, 106 F.3d at 863 (holding that the district court did not err in finding that delay prior to the potential extraditees' bail hearings and "the highly probable lengthy delays thereafter as a result of the actual extradition proceedings themselves and the appeals therefrom" constituted a special circumstance where the potential extraditees "were not exclusively responsible for the delay" and where delaying the extradition hearings pending resolution of a separate extradition case in another district court "served the court's interest in prudent judicial administration"); *see also* Nathaniel A. Persily, Note, International Extradition and the Right to Bail, 34 Stan. J. Int'l L. 407, 430–431 (1998)(noting that "[o]ften, the 'possibility of delay' argument is used to suggest that there are unique legal issues surrounding the extraditability of the accused-issues of first impression or complexity that will require more time to resolve.... The standard (to the degree that

there is one) seems to rest more on the assignment of fault to prosecutors than to be an actual measure of time elapsed.")(footnote omitted).

For all of these reasons, delay is a special circumstance weighing in favor of granting Santos's bail request.

### High probability of success

 Santos contends that he has established a high probability of defeating extradition, and that this is a special circumstance warranting his release on bail. *See Salerno*, 878 F.2d at 317–318 (stating that a potential extraditee's "high probability of success" is a special circumstance that may warrant release on bail).

 In an extradition proceeding, the government bears the burden of establishing extraditability, and consequently the government must show, among other things, that there is competent legal evidence establishing probable cause to believe that person named in the extradition request committed the charged offenses. *See* 18 U.S.C. §§ 3184, 3190; *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1335, 164 L.Ed.2d 51 (2006); *Quinn v. Robinson*, 783 F.2d 776, 782–783 (9th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986). Article 10 of the Extradition Treaty also states that the extradition request must be accompanied by a certified copy of an arrest warrant and evidence which, under the laws of the United States, would justify Santos's "*apprehension and commitment for trial....*" Extradition Treaty, art. 10, section 3.

In its present posture, this case is shrouded in so much uncertainty that any assessment of probability of success on the merits is simply not feasible. The uncertainty flows from several sources. Most strikingly, of course, Mexican courts have twice invalidated Santos's arrest warrant

in lengthy written decisions, casting doubt over the ultimate question whether probable cause exists to believe Santos committed the charged offenses.

An added element of uncertainty stems from this court's inability to read the complete text of the amparos. The amparos are written in Spanish, and neither party has provided the court with a complete translation of them. During the hearing on Santos's motion to dismiss, the court emphasized to both parties the importance of obtaining a complete translation of both of the amparos, but to date neither party has done so. Santos's counsel provided a certified translation of the last two pages of the second amparo. The court recognizes that obtaining a translation of two long, formalistic Spanish-language court decisions may require some time and effort. However, given the importance of those documents to Santos's request for release on bail and to the extradition case as a whole, both parties were under an obligation to obtain a translation of those documents, not only for the court's benefit, but also for their own understanding of the case and their obligations in prosecuting or defending it.

Muddying the waters further, the parties disagree about the legal status and significance of the amparos given the procedural posture of the amparo litigation in Mexico. In its opposition to Santos's motion to dismiss, the government contended that the amparo is not final or enforceable while the prosecutor's appeal of the amparo remains pending. [Opp. to MTD 3]. Santos conceded that point in his motion for release on bail. [*See* Motion for Bail 5 n. 1]. During the bail hearing, however, government counsel went farther, suggesting that the appeal of the amparo rendered that decision a legal nullity which has absolutely no significance and may not be considered in any manner by this court.

The more extreme version of the government's argument appears to be inconsistent with the declaration submitted by the government's expert. Alvarez states in his declaration that the filing of a "writ of review" with respect to the amparo "has as a main effect that the sentence dated August 16, 2006, pronounced by the Third District Judge above-mentioned may not be fulfilled until said medium of defense is resolved," and that the amparo "is not final since the writ of review may be resolved" by either affirming the amparo or revoking it. [Opp. to MTD, Ex. 2 (Alvarez Affidavit) 29–30]. For this reason, the amparo is not "final and conclusive" and "cannot be executed." [Opp. to MTD, Ex. 2 (Alvarez Affidavit) 30]. Those statements indicate that the filing of an appeal means that the second amparo is not enforceable but does not render it a legal nullity. Therefore, even the government's own expert rejects the government's suggestion that this court must ignore the fact that Mexican courts have twice invalidated warrants for Santos's arrest, and that there is no significance to the Mexican court's conclusion that the arrest warrant violated Santos's constitutional rights as related to "his probable responsibility in the crime attributed to him" because "the issuing authority did not state a solid foundation for the elements required in the manner that all courts must do in issuing their determination relative to proper foundation and reasons for the same." [Santos's MTD, Ex. B at 1].

The government also argues that even if the second amparo may be considered, it does not indicate an absence of probable cause under the standard this court must apply pursuant to the Extradition Treaty and governing law. *See* Extradition Treaty, art. 10; *Prasoprat,* 421 F.3d at 1013; *Quinn,* 783 F.2d at 782–783. There are two problems with that argument. The first is that despite the court's requests,

the government still has not provided the court with a complete translation of the amparos. This court is not comfortable distinguishing or minimizing the import of decisions of a foreign court written in a foreign language which the court cannot read.

The second problem is that the government has presented no authority to support its argument that this court must disregard the Mexican court's conclusions regarding the absence of probable cause because the standard for establishing probable cause under Mexican law is distinct from that under United States law. The declaration submitted by the government's expert does not address this point directly; however, Alvarez states that the arrest warrant was invalidated for "lack of **grounds and facts** coming from the arrest warrant," and that pursuant to article 16 of the United Mexican States Constitution, "[n]o person shall be disturbed in terms of himself, his family, domicile, papers or possessions, unless there is a written order of an authority with jurisdiction, which states the grounds and facts for the legal causes of the proceeding." [Opp. to MTD, Ex. 2 (Alvarez Affidavit) 31 (emphasis in original)]. Alvarez also states that under Mexican court precedent, the Mexican constitution requires that

> every authority act shall be duly and sufficiently grounded, which is the first thing that shall be clear in the legal regulation applicable to the case, and the second thing that shall also be clearly established is the special circumstances, particular reasons or immediate causes taken into consideration for the issuance of the act. Besides, it is necessary that there is a consistency between the grounds adduced and the applicable regulations, that is, that in the specific case falls within the scope of the normative hypothesis.

[Opp. to MTD, Ex. 2 (Alvarez Affidavit) 32]. Nothing in the expert's declaration suggests that the law of probable cause in Mexico is so different from that in the United States that this court should disregard a Mexican court's finding that the second arrest warrant was not supported by probable cause.

The layers of uncertainty caused by these variables make this case exceptional. They render it impractical for the court to attempt to assess Santos's probability of success. Probability of success, however, is not required to find special circumstances warranting release on bail; it is simply one of the illustrative factors that a court has discretion to consider. *See Salerno*, 878 F.2d at 317–318. In this case, the uncertainty regarding the ultimate validity of the arrest warrant, the existence of probable cause, the significance of the amparos, and the outcome of the amparo litigation make the government's probability of success sufficiently unclear that it constitutes a special circumstance warranting Santos's release on bail.

### Risk of non-appearance

 Santos contends that he is not at risk for failing to appear for his extradition hearing and does not pose any danger to the community.

 In general, courts assessing the risk that a potential extraditee seeking release on bail will intentionally fail to appear for further extradition proceedings look to 18 U.S.C. § 3142(g), which prescribes the factors to be considered "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." *See, e.g., In re Extradition of Campillo Valles*, 36 F.Supp.2d 1228, 1231 (S.D.Cal.1998)(considering "the standards governing the release or detention of a defendant in the United States" in

determining the risk of non-appearance); *In re Extradition of Nacif–Borge*, 829 F.Supp. 1210, 1221–22 (D.Nev.1993) (noting that 18 U.S.C. § 3142(g) is not directly applicable to extradition cases but using its "detailed outline of traditional factors" in evaluating the risk of non-appearance in an extradition case).

Among other things, the court may consider the nature and circumstances of the charged offenses; the weight of evidence against the potential extraditee presented in the extradition complaint and supporting affidavits; the seriousness of the offense charged and the range of possible penalties; the potential extraditee's past conduct, including history of drug or alcohol abuse, any prior criminal convictions and association with known criminals and evidence of attempts to avoid arrest; the potential extraditee's use of or access to dangerous weapons; his or her family ties and ties to the community, employment, and financial resources; whether the potential extraditee's release poses a danger to any person or to the community; and the possibilities of posting security for an appropriate bond. *See* 18 U.S.C. § 3142(g)(1)-(4); *Campillo Valles*, 36 F.Supp.2d at 1231 (citing that statute).

The offenses charged in Mexico are serious and violent, and the alleged homicide victim is a child. The Mexican warrant for Santos's arrest, however, has been twice has been invalidated by Mexican courts on the grounds of procedural defects and insufficient evidence to establish probable cause to believe that Santos committed those offenses.

Santos is a Mexican citizen and a legal permanent resident of the United States who has significant family ties in the Los Angeles area, where his biological father, sister, and brother-in-law reside, and he also enjoys a close relationship with an uncle who lives in San Jose, California. Santos reported that he had resided with his father off and on for the past 15 years, and that the last time he did not reside with his father was in 2003, when Santos lived in Florida for two to three months. Santos's father, Jose Luis Munoz Barba, stated that Santos resided with him for approximately the past year, but he said that for the prior four to five years, Santos had resided with an aunt whose address Santos's father did not know.

Santos also has family ties in Mexico, where his wife and three children reside. He reported that he travels to Tijuana, Mexico about fifteen times a year to visit them, and also that he has traveled to Guadalajara and Nayarit, Mexico approximately 25 to 30 times in the past nine years.

Until his arrest, Santos was self-employed in the United States buying and reselling vehicles. Prior to that he was employed selling clothing and working for a construction company. Nothing in the record suggests that Santos has significant assets or financial resources.

Santos reported that he suffers from gastric problems and a back injury sustained while incarcerated. He takes medication for these conditions. Nothing in the record suggests a history of alcohol or drug abuse.

Prior to his arrest in the United States, Santos had no criminal history. He was arrested in the United States following a 30–minute vehicle pursuit by special agents in unmarked surveillance vehicles, with red lights activated. During the pursuit, the driver of the vehicle in which Santos was a passenger "made several evasive and counter-surveillance maneuvers." [Santos's MTD, Ex. A at 9–10]. Santos was apprehended after special agents summoned a marked Los Angeles Police Department vehicle, which succeeded in effecting a traffic stop.

When he was arrested, Santos was in possession of a Florida driver's license, an I-551 Resident Alien card, and a Social Security Administration card in the name of "Jose Luis Hernandez Santos." He also had an Arizona driver's license and a temporary California driver's license in the name "Jose Luis Hernandez." After special agents obtained a copy of his California driver's license application, Santos was charged with perjury, in violation of California Penal Code section 118, because the license application did not contain his "true name" and because it omitted reference to the Florida driver's license.

Santos's use of different names on his driver's licenses is not persuasive evidence of lack of truthfulness or risk of flight. In this court's experience, the tradition of using two surnames (maternal and paternal) not uncommonly leads to inconsistencies in, or causes confusion regarding, the name(s) of persons of Hispanic origin in the United States. It appears that Santos is Santos's maternal surname, while Hernandez is his stepfather's surname and Munoz is his biological father's surname. Santos's counsel also pointed out that the driver's licenses in question all reflected the same social security number and date of birth, negating the suggestion that Santos was attempting to conceal his identity.

The fact that the charged offenses are violent felonies is significant, but the significance of that fact for this analysis is substantially reduced by the findings of the Mexican courts regarding the invalidity of the arrest warrants and absence of probable cause. Given the questionable evidentiary foundation for the Mexican charges (as indicated by the two amparos invalidating them) and Santos's lack of a prior criminal record, Santos has met his burden to show that he does not pose a danger to any person or to the community.

While it is somewhat troubling that the car in which Santos was a passenger attempted to evade police, concerns arising from that fact are lessened by the fact that Santos was not the driver, no charges were filed arising from the pursuit, the pursuing vehicles bore flashing red lights but were unmarked cars, and that a traffic stop was effected when a marked Los Angeles Police Department car joined in the pursuit.

Although Santos is a Mexican national and has family ties in that country, his counsel represented that Santos is fearful of returning there, and it seems doubtful that he would flee to the country whose extradition request he is resisting, especially given the personal history and significant family ties and support he has in the United States. In particular, Santos's father has agreed to act as a surety and to risk the considerable equity he has in his residence to secure an appearance bond, and he also has agreed that Santos can reside with him.

Considering all the circumstances, the risk of non-appearance is more than negligible but remains low, and such risk can be adequately mitigated by the combination of a secured appearance bond and restrictive conditions of release.

Decisions denying bail in extradition cases often cite the national interest of the United States in fulfilling its extradition treaty obligations and the need to avoid "embarrassing foreign affairs consequences if the extraditee were to flee while on release." *Morales*, 906 F.Supp. at 1374. That interest deserves little weight in the extraordinary circumstances of this case. Notwithstanding the grave deficiencies in the second arrest warrant identified by its own court, the holding that Santos's constitutional rights were violated, and the pendency of an appeal leaving the viability of the second arrest warrant in doubt, the Republic of Mexico asks the United States to rely on that arrest warrant to fulfill Mexico's obligations under the Extradition

Treaty. The Republic of Mexico must accept some responsibility for placing the government of the United States in the uncomfortable position of having to seek extradition and resist release on bail in a case where its own prosecutors have failed to obtain an arrest warrant sufficient to satisfy a Mexican constitutional court.

## Conclusion

Santos has demonstrated two special circumstances weighing in favor of release on bail: delay and a high degree of uncertainty regarding the merits of the request for extradition. He also has demonstrated that he is likely to appear for future proceedings, and that any risk of flight can be satisfactorily mitigated by the conditions of release set forth below. Accordingly, Santos's motion for release on bail is **granted,** provided that Santos complies with the following conditions:

(1) Sign an appearance bond in the amount of four hundred and fifty thousand dollars ($450,000), secured by a justified Affidavit of Surety [CR–3] and full deeding of property by his father, Jose Luis Munoz Barba;

(2) Surrender all passports to the Clerk of Court, or sign a declaration attesting that he does not have a passport and promising that he will not apply for the issuance of a passport during the pendency of this case;

(3) Refrain from traveling outside the Central District of California without the prior permission of the Court;

(4) Refrain from entering the premises of any airport, seaport, railroad station, or bus terminal which permits exit from the Central District of California without the prior permission of the Court;

(5) Reside with his father, Jose Luis Munoz Barba, 9730 Aero Drive, Pico Rivera, California, only, and do not change residence without the prior permission of Pretrial Services;

(6) Maintain or actively seek employment and provide proof of such efforts and any resulting employment to Pretrial Services;

(7) Avoid all contact, directly or indirectly, with any person who is or who may become a victim or a potential witness in the Mexican investigation or prosecution;

(8) Refrain from using or possessing any firearms, ammunition, destructive devices, or other dangerous weapons;

(9) Refrain from using or possessing any identification other than identification in Santos's own legal name or true name;

(10) Participate in the following home confinement program components and abide by all requirements of the program, which shall include electronic monitoring or such other location verification system as may be specified by Pretrial Services: Home Detention. Santos is restricted to his father's residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered obligations; or such other activities as may be approved in advance by Pretrial Services.

(11) Pay all or part of the cost of the home confinement program based upon his ability to pay as determined by Pretrial Services.

Santos shall be released to Pretrial Services only, and Pretrial Services is directed to monitor Santos's compliance with the

conditions of release intensively throughout the pendency of this case.

**IT IS SO ORDERED.**